UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KARIN E. WALTHER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16 CV 1530 CDP |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Karin Walther brings this action under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's final decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Because the Commissioner's decision is not supported by substantial evidence on the record as a whole, I will reverse the decision and remand for further proceedings.

## Procedural History

On May 9, 2013, the Social Security Administration denied Walther's January 22, 2013 application for DIB, in which she claimed she became disabled on January 1, 2013, because of degenerative disc disease, arthritis, fibromyalgia,

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), Berryhill is automatically substituted for former Acting Commissioner Carolyn W. Colvin as defendant in this action.

osteoarthritis, severe headaches and depression. At Walther's request, a hearing was held before an administrative law judge (ALJ) on January 12, 2015, at which Walther testified. At that hearing, the ALJ granted Walther's request for consultative exams with a neurologist and psychologist. On August 5, 2015, a second hearing was held before the ALJ at which a vocational expert testified. On August 24, 2015, the ALJ denied Walther's claim for benefits, finding the vocational expert's testimony to support a finding that Walther could perform work as it exists in significant numbers in the national economy. On August 3, 2016, the Appeals Council denied Walther's request for review of the ALJ's decision. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

## Evidence Before the ALJ

Walther testified at the first hearing held before the ALJ on January 12, 2015. She was represented by counsel. Upon questioning by the ALJ, Walther stated that she was 44 and lived with her husband. Walther described the previous positions she had worked at, including as a receptionist and administrative clerk, a secretary, an administrative assistant, and a sales representative. Walther listed the medications she was taking and testified that she suffered from migraines, fibromyalgia, asthma, spasmodic dysphonia, and anxiety attacks. The record of the hearing reflects that throughout her testimony, Walther switched between sitting and standing. When questioned by her counsel, Walther explained that she had to

do things in short intervals with frequent breaks and that she could only sustain an activity for ten minutes. Walther testified that she had to alternate between sitting and moving/walking to relieve her pain. (Tr. 44-66).

On August 5, 2015, a second hearing was held before the ALJ at which a vocational expert testified. At the outset of questioning, the ALJ confirmed that the vocational expert understood that if she gave an opinion that conflicted with information contained in the *Dictionary of Occupational Titles* (DOT), she was to advise the ALJ of that conflict and the basis of her opinion (Tr. 78).

During the hearing, the ALJ presented the vocational expert with a hypothetical scenario. Specifically, the ALJ asked the vocational expert to consider a hypothetical claimant of Walther's age, education, and past work, who was "capable of work at a range of light," which the ALJ defined as having the lifting requirements for "light" level exertional work, standing for two hours, walking for two hours, and sitting for four hours during the eight-hour work day. The ALJ also limited the claimant to never climbing ramps, stairs, ladders, ropes, or scaffold, and only occasionally balancing, stooping, kneeling, crouching, and crawling. The claimant was further limited to frequent use of upper extremities for handling, fingering, and feeling, and frequent use of lower extremities to operate foot controls. The ALJ restricted the hypothetical claimant from exposure to hazards such as unprotected heights and dangerous machinery; to only occasional exposure

3

to atmospheric conditions, including fumes and odors; to only occasional exposure to humidity and wetness; and to only "moderate" noise levels, as classified in the *Selective Characteristics of Occupations Defined*.[2] Finally, the ALJ limited the claimant to simple, routine tasks, in a stress-free work environment, which the ALJ defined as requiring only occasional work place changes with only occasional contact with supervisors, co-workers, and the general public. (Tr. 80).

Based on this list of limitations, the vocational expert opined that the hypothetical claimant could not perform Walther's past jobs, but there was still other work available in the national economy. The vocational expert testified that the hypothetical claimant could perform jobs such as document preparer, press clippings cutter and paster, and tube operator. The vocational expert stated all three jobs had a sedentary exertional level. When asked by the ALJ if her testimony was consistent with the DOT, the vocational expert answered "yes." (Tr. 80-81).

## Decision of the ALJ

In a decision dated August 24, 2015, the ALJ found that Walther was insured through June 30, 2016. The ALJ determined Walther had not engaged in substantial gainful activity since January 1, 2013, the alleged onset date. The ALJ concluded that Walther had severe impairments including degenerative disc disease, fibromyalgia, migraines, affective mood disorder, and anxiety disorder.

---

[2] The *Selected Characteristics of Occupations Defined* ("SCO") is a companion volume to the DTO.

4

However, the ALJ determined Walther did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22-24).

After considering the entire record, the ALJ determined Walther had the residual functional capacity (RFC) to perform sedentary[3] work, as defined in 20 CFR 404.1567(a) with the following limitations:

> The claimant [Walther] is able to stand for 2 hours, walk for 2 hours, and sit for 4 hours; the claimant can never climb ramps and stairs, ladders, ropes or scaffolds; the claimant can occasionally balance, stoop, kneel, crouch and crawl; the claimant can frequently use her upper extremities for handling, fingering, and feeling; the claimant can frequently use her lower extremities to operate foot controls; the claimant can have no exposure to hazards such as unprotected heights and dangerous machinery; the claimant can have occasional exposure to atmospheric conditions, humidity, wetness, etc.; the claimant will need to work in an environment where the noise would be classified as moderate in Selected Characteristics of Occupations companion to the Dictionary of Occupational Titles; the claimant is capable of performing simple, routine tasks in a stress free work environment which I define as one in which there are only occasional workplace changes and only occasional contact with supervisors, co-workers and the general public.

(Tr. 24-25). The ALJ then summarized Walther's medical records at Tr. 25-29.

The ALJ found that Walther was unable to perform her past relevant work. However, in light of Walther's age, high school education, past work experience,

---

[3] The ALJ changed the exertional level set forth in the hypothetical as "light" to "sedentary" in the RFC stated in her decision. (Tr. 24-25, 80-81). The government argues this was a mere clerical error by the ALJ. I agree with plaintiff that this could not have been a mere clerical error, but I conclude that remand is warranted on a different basis, for the reasons that follow.

and RFC, the ALJ determined that there were jobs in the national economy which Walther could perform. These jobs included document preparer, press clippings cutter/paster, and tube operator. Thus, the ALJ concluded that Walther had not been under a disability from January 1, 2013, through the date of the decision. (Tr. 30-31).

## **Legal Standard**

To be eligible for disability insurance benefits under the Social Security Act, Walther must prove that she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a),

404.1520(a). If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined

7

as "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. *Brantley v. Colvin*, No. 4:10CV2184 HEA, 2013 WL 4007441, at *3 (E.D. Mo. Aug. 2, 2013) (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F.Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

## Discussion

In her brief in support of the complaint, Walther raises two arguments. First Walther asserts that the ALJ erred in relying on vocational expert testimony that was in conflict with the *Dictionary of Occupational Titles*. Because of this error,

9

Walther contends the ALJ's decision is unsupported by substantial evidence. Walther also argues that because the vocational expert testified as to a functional limitation—concerning Walther's need for a stress-free work environment—not described in the DOT, the ALJ erred when she did not articulate findings establishing a reasonable basis for this testimony.

Walther first contends there is a clear conflict between the VE's testimony and the DOT. Specifically, in both the hypothetical question and the RFC finding, the ALJ limited claimant to sitting for 4 hours during an 8-hour workday. In step five, the VE opined that given the hypothetical set forth, there were three available jobs for Walther and stated all three were performed at sedentary exertion. The vocational expert did not identify any conflicts between the sitting limitation and the DOT. When asked by the ALJ if her testimony was consistent with the DOT, the VE responded "yes."

Walther claims that a limitation to sitting no more than 4 hours during an 8-hour workday conflicts with the definition of sedentary exertion and that the vocational expert did not explain this discrepancy with the DOT. Walther further contends that because the ALJ adopted the vocational expert's testimony and did not identify or resolve these conflicts, she committed legal error.

In step five of the ALJ's analysis, the ALJ may rely on the testimony of a vocational expert. 20 C.F.R. § 404.1566(e). Vocational expert testimony should

generally be consistent with the Dictionary of Occupational Titles (DOT). *See Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Information in Disability Decisions*, SSR 00–4p, 2000 WL 1898704 (Dec. 4, 2000). When conflicts arise, SSR 00-4p provides that an ALJ "must … identify and obtain a reasonable explanation for any conflicts." *Id.* at * 1. SSR 00-4p states:

> When a [vocational expert] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] evidence and information provided in the DOT. In these situations, the adjudicator will:
> Ask the [vocational expert] if the evidence he or she has provided conflicts with information provided in the DOT; and
> If the [vocational expert's] evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

*Id.* at * 4.

Here, the VE recommended three jobs requiring sedentary exertion. A sedentary job:

> is defined as one that involves sitting, [although] a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday.

11

*Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P, 1996 WL 374185, at * 3 (July 2, 1996).

Thus, the sitting limitation of 4 hours is in apparent conflict with the presumed requirement in a sedentary job that the person performing the job will be expected to sit the vast majority of the workday. *See Stamper v. Colvin*, 174 F. Supp. 3d 1058, 1065 (E.D. Mo. 2016). Moreover, the DOC descriptions for each of the three recommended positions state the following:

> Sedentary work invoves [sic] sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occsasionally[sic] and all other sedentary criteria are met.

*See* Dictionary of Occupational Titles 249.587-018, 1991 WL 672349 (4th Ed. Rev. 1991) (Document Preparer); DOT 249.587-014, 1991 WL 672348 (Cutter-And-Paster, Press Clippings); DOT 239.687-014, 1991 WL 672235 (Tube Operator). Because the jobs at issue here are explicitly sedentary, this creates a "de facto conflict" between the VE's testimony and the DOT job description.[4] *Stamper*, 174 F. Supp. 3d at 1066.

---

[4] Defendant rejects Walther's allegation of a conflict between the VE's testimony and the DOT job descriptions, arguing that it is incorrectly based on a simple clerical error in the written opinion. Specifically, defendant avers the ALJ mistakenly stated in her written opinion that Walther's exertional level is "sedentary" instead of "light" as properly set forth in the hypothetical at the hearing (Tr. 24-25, 80-81). This inconsistency, however, is irrelevant to and does not address Walther's specific allegation of error, which concerns the 4-hour sitting limitation to the exertional level.

When conflicts arise, an ALJ must resolve conflicts between the testimony and the DOT "by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the DOT information." SSR 00–4p, 2000 WL 1898704, at *2. In *Moore v. Colvin*, the Eighth Circuit explained:

> A [vocational expert] must offer an explanation for any inconsistencies between her testimony and the DOT, which the ALJ may accept as reasonable after evaluation. *See Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir.2014) (concluding that the ALJ had complied with SSR 00–4p because, in response to extensive questioning by the ALJ regarding inconsistencies, the VE offered evidence of her personal observations of the requirements of the proposed jobs and cited to a professional journal to support her recommendation). **Absent adequate rebuttal, however, [vocational expert] testimony that conflicts with the DOT "does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform."**... The ALJ is not absolved of this duty merely because the VE responds "yes" when asked if her testimony is consistent with the DOT.

769 F.3d 987, 990 (8th Cir. 2014) (emphasis added) (citing *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) (reversing and remanding because "the record does not reflect whether the [vocational expert] or the ALJ even recognized the possible conflict between the hypothetical" and jobs suggested)).

In *Moore*, the claimant's RFC limited him to only occasional overhead reaching. 769 F.3d at 989. The VE testified that such a claimant could perform janitorial or cafeteria attendant work. *Id.* However, the VE failed to address the

13

claimant's limitations on reaching when she recommended the job of "cafeteria attendant," which is defined in the DOT as involving frequent reaching. *Id.* The Eighth Circuit found that there was an apparent unresolved conflict between the VE testimony and the DOT, and the ALJ failed to elicit a sufficient explanation to resolve that conflict. *Id.* at 989–90 (citing SSR 00–4p, 2000 WL 1898704, at *2–4). It was not sufficient in *Moore* to simply ask the VE if her testimony was consistent with the DOT. *Id.* at 990. As a result, the matter was remanded because "the Commissioner failed to meet her burden ... [at] step five." *Id.*

Similarly, here, the VE did not address Walther's sitting limitation when she recommended the three sedentary jobs. Nor did the ALJ acknowledge the apparent conflict or attempt to elicit testimony from the VE to resolve it. I note that the ALJ asked and the VE testified that the vocational testimony was consistent with the DOT. However, the responsibilities of the ALJ did not end there. *Boyd v. Berryhill*, No. 1:16CV252 RLW, 2018 WL 1441259, at *6 (E.D. Mo. Mar. 21, 2018) (citing *Moore*, 769 F.3d at 989). The vocational expert's affirmative response to whether her testimony was consistent with the DOT is not sufficient to explain the inconsistency. *See Thomas v. Berryhill*, 881 F.3d 672, 678 (8th Cir. 2018). Thus, the ALJ failed to comply with step five of the disability analysis as she relied on vocational expert testimony that conflicted with the DOT without

14

asking the VE for an explanation. Such unsupported testimony cannot constitute substantial evidence of the existence of other available jobs in the economy. *Id.*

I will therefore remand this matter to the Commissioner for further proceedings. Upon remand, the ALJ must determine whether jobs exist in the economy that Walther is capable of performing. Furthermore, the ALJ is encouraged to address the second issue raised by Walther in her brief and articulate a reasonable basis for the functional limitation in the RFC defining a stress-free work environment.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this case is **REMANDED** for further proceedings consistent with this opinion.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March, 2018.